UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WALTER J. HIMMELREICH, | ) | CASE NO. 4:10 CV 2404 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| FEDERAL BUREAU OF PRISONS, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Walter J. Himmelreich filed this *Bivens*[1] action against the United States Bureau of Prisons ("BOP"), the Elkton Federal Correctional Institution ("FCI Elkton"), Federal Inmate Peter B. Macari, Federal Inmate Roger Oberkramer, former FCI Elkton Security Captain J. Fitzgerald, FCI Elkton SIS Security Officer Lieutenant Butts, FCI Elkton Corrections Officer Simmons, FCI Elkton Health Care Administrator Bunts, FCI Elkton Psychology Department Staff Physician Dr. Lefever, FCI Elkton Nurse Newland, FCI Elkton Warden J.T. Shartle, and United States Attorney General Eric Holder. In the Complaint, Himmelreich alleges he was physically assaulted by two other inmates. He seeks monetary damages.

**Background**

Himmelreich alleges he and Oberkramer got into a verbal altercation on October 11, 2008. Oberkramer told Himmelreich that he was going to put his head through the glass door of the TV room. Upon seeing the surveillance cameras, he told Himmelreich he would retaliate at a time and place where he would not be observed. Himmelreich claims he could not find an opportunity to have a private conversation with a security officer to convey the threat.

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 383 (1971).

At the time this verbal altercation occurred, Macari was in disciplinary segregation. Macari was scheduled to be released from segregation on October 14, 2008, but refused to go to the general population claiming he was experiencing a great deal of stress. He proclaimed he would not be able to live with pedophiles and would "smash" one if forced to return to the general population. (Compl. at 5.). Himmelreich claims he is reputed to be "one of the biggest pedophiles on the Elkton compound." (Compl. at 5.) He further contends that Macari's Pre-Sentence Report shows he has a history of committing violent crimes. Himmelreich claims Newland, the case manager, should have known that Himmelreich would be in danger if Macari was released from segregation.

Macari was moved to the general population on October 20, 2008. Later that day, October 20, 2008, Himmelreich was attacked by Oberkramer and Macari. Himmelreich was returning from his work detail and had just climbed the stairs to Unit B, when he was approached by the other two inmates. He contends Officer Simmons was standing outside, approximately ten feet from the sally port door of Unit B, smoking a cigarette. Another officer was stationed at the door to Unit A, but was not at his post. Himmelreich claims Macari began to hit and kick him while Oberkramer held the door closed so he could not escape. Other inmates returning to the unit began to yell, "fight!" in the stairwell, but neither Officer Simmons nor the officer from Unit A responded. Himmelreich states that the attack lasted for approximately a minute, until the "move is closed" announcement was made. (Compl. at 5C.) At that point, the inmates retreated into the unit. Himmelreich initially went to his cell to assess the damage and then he returned to the scene of the attack to wait for Officer Simmons.

Himmelreich was taken to the Lieutenant's Office and questioned about the incident. He was asked to identify his attackers, and was able to point out Oberkramer. Macari voluntarily

surrendered to the Lieutenant's office. All three inmates were taken separately to the medical department to be treated for their injuries and then escorted to segregation.

At 9:30 p.m., Himmelreich complained he was having difficulty inhaling. He was taken to the medical department. Nurse Folkwein was on duty and examined him. She concluded he required a higher level of care than she could provide but was unable to reach the on-call physician. The administrator she contacted would not authorize a trip to an outside facility and ordered a combination of Tylenol and Motrin. Himmlreich was then returned to segregation for the night. On October 22, 2008, he received x-rays of his chest and head. He does not provide the results of these x-rays. He claims he began to suffer from Tinnitus after the assault. He reported to sick call. He contends he was not charged a co-pay for this visit because it was related to the attack; however he was charged the co-pay for subsequent visits. He filed grievances but his funds were not returned. He claims he visited the Psychology Department at FCI Elkton in November 2008. He states he was told by Dr. Lefever that he was safe at Elkton. He claims the Defendants were deliberately indifferent to his safety and to his serious medical needs.

Himmelreich attempted to pursue other remedies against the inmates and the United States. He asked Lieutenant Butts to file charges against the inmates with the FBI. He later learned the FBI would not initiate a criminal investigation. He filed an action under the Federal Tort Claims Act, in February 2009, claiming that prison officials failed to protect him from Macari's attack. That action, *Himmelreich v. United States*, No. 4:10CV307 (N.D. Ohio Nov. 18, 2010)(Adams, J.) was dismissed on the merits. He claims that shortly after he filed the action in federal court, he was placed in segregation without receiving an explanation. He claims Captain Fitzgerald told him that he was in segregation for filing the tort claim. He claims he was denied Due Process and was

3

subjected to cruel and unusual punishment.

## Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to section 1915(e).

### I. Defendants

As an initial matter, Himmelreich names several Defendants who are not subject to suit in a *Bivens* action.  *Bivens* provides a cause of action against individual officers acting under color of federal law alleged to have acted unconstitutionally.  *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001).  A *Bivens* action therefore cannot be brought against a federal prison, the Bureau of Prisons, or the United States Government.  *Id*.  Himmelreich's claims against the BOP, and FCI Elkton, therefore, must be dismissed.

Moreover, claims against a federal officer in his official capacity impose liability on the office he represents.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  Warden J.T. Shartle and Attorney

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

General Eric Holder are federal officers employed representing the United States Government. Claims against them in their official capacities must also be dismissed.

Finally, *Bivens* claims may only be brought against individuals acting under color of federal law. Generally to be considered to have acted under color of federal law, the person must be a United States government official or employee. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Macari and Oberkramer are inmates in a federal correctional institution, not government officials. They are not subject to suit in a *Bivens* action.

## II. Respondeat Superior

To the extent Himmelreich was bringing claims against Eric Holder and J.T. Shartle in their individual capacities, he has not stated a claim cognizable under *Bivens*. He states these individuals are liable to him for damages under the doctrine of *respondeat superior*. *Respondeat superior* is not a proper basis for liability in a *Bivens* action. *See Nwaebo v. Hawk-Sawyer*, No. 03-3801, 2003 WL 22905316, at *1 (6th Cir. Nov. 28, 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77(1976)); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983); *Kesterson v. Fed. Bureau of Prisons*, No. 02-5630, 2003 WL 1795886 (6th Cir. April 2, 2003); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir.2003) (to be subject to *Bivens* liability, a defendant must have had "direct, personal participation" in the constitutional violation). The liability of supervisors cannot be based solely on the right to control employees, nor simple awareness of employees' misconduct. *See Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee v. Luttrell,* 199 F.3d 295,

300 (6th Cir.1999). At a minimum, a plaintiff must show that the supervisor implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Id.* There are no allegations in the Complaint that reasonably suggest either Warden Shartle or United States Attorney General Eric Holder were personally involved in the assault, or implicitly authorized or approved of the actions of prison personnel in relation to the assault. Accordingly, the claims against them must be dismissed.

### III. Eighth Amendment

Himmelreich claims the Defendants failed to adequately protect him from an inmate assault and did not provide him with proper medical care for his injuries. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and

subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

As a threshold matter, Himmelreich fails to establish the objective component of his claims against Captain Fitzgerald and Lieutenant Butts. He alleges he filed a grievance after his attack concerning the state of security at FCI Elkton. He alleges Captain Fitzgerald's response to his criticism was defensive and unhelpful. He claims Lieutenant Butts told him he would file a report with the FBI, but the FBI would not proceed with an investigation. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). Even if Captain Fitzgerald's response sounded defensive or unsympathetic, it would not state a claim under the Eight Amendment. Verbal harassment and offensive comments are generally not cognizable as constitutional deprivations. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). In addition, Himmelreich does not indicate how Lieutenant Butts's failure to report the incident to the FBI violated civilized standards of humanity and decency. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). These allegations do not rise to the level of a Constitutional violation.

Similarly, Himmelreich does not allege facts to suggest Bunts, Dr. Lefever, or Nurse Folkwein were deliberately indifferent to his serious medical needs. There are no allegations against Bunts. Himmelreich claims he was treated by Nurse Folkwein after the assault. She was unable to contact the physician on call and was denied permission from an administrator to take him to an outside medical provider. He was given Tylenol and Motrin for the pain. He does not indicate the nature of his injuries. He states he was given chest and head x-rays. He does not provide the results of those tests. He contends he saw Dr. Lefever in the Psychology Department approximately a month after the assault. He alleges he was told he was safe. There is no indication in any of these

7

allegations that Himmelreich was denied treatment for a serious medical condition.

In addition, Himmelreich has not established the Defendants acted with a sufficiently culpable mental state to justify a finding of liability under the Eighth Amendment. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Id.* at 837. Mere negligence will not suffice. *Id.* at 835-36. Himmelreich alleges Newland should have been familiar with the files of the inmates in her unit and should have been aware of the threats Macari made in segregation against pedophiles. He further claims she should have known he would be a target if Macari was released to the general population. He also contends that Corrections Officer Simmons was smoking and not at his post when the assault occurred. These allegations describe conduct which is negligent at best. There are no facts in the Complaint which reasonably suggest these individuals acted with a sufficiently culpable state of mind to trigger Eighth Amendment protections.

### IV. Disciplinary Segregation

Finally, Himmelreich contends he was denied due process when he was placed in segregation without explanation in 2009. The Fourteenth Amendment provides a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the state of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations of constitutionally protected interests which are

conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case. *Sandin*, 515 U.S. at 484.  Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement was considered to be "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487.  Similarly, the Sixth Circuit Court of Appeals has held a prisoner's designation as a member of a security threat group did not give rise to a liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir.2005).  There is no indication Himmelreich was sanctioned with the loss of good time credits.  Absent other allegations, Himmelreich's placement in segregation for a period of 60 days does not impose "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Himmelreich also contends his placement in segregation was a violation of the Eighth Amendment. There was nothing in the Complaint to indicate that the conditions to which he was subjected in the segregation unit constituted cruel and unusual punishment.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.


Date: March 9, 2011              */s/ John R. Adams*
                                 JOHN R. ADAMS
                                 UNITED STATES DISTRICT JUDGE

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.